# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

**SCOTT ALLAN BITTLE,** individually, and on behalf of all others similarly situated,

    *Plaintiff,*

v.

**MCCORMICK & CO., INC.,**

    *Defendant.*

Cause No.: 15-1989

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Scott Allan Bittle ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through undersigned counsel, brings this Class Action Complaint against Defendant, McCormick & Co., Inc., ("McCormick" or "Defendant"), and alleges the following:

## NATURE OF THE CASE

1.    This case is about unlawful slack-filling.

2.    McCormick manufactures, packages, advertises, distributes, and sells McCormick® Pure Ground Black Pepper.

3.    Over the past several years, Plaintiff has become accustomed to purchasing Defendant's products because of their consistent and uniform size and the consistent and uniform amount of ground black pepper contained in the tins. However, Plaintiff recently learned that Defendant has been providing 25% less ground black pepper in Defendant's products due to unlawful, unjustified slack-filling.

4.    Upon information and belief, for decades, McCormick has sold its ground black pepper in opaque metal tins, which had been substantially filled to capacity and which had become the industry standard.

1

5.    Upon information and belief, at the beginning of 2015, McCormick began filling at least three of its standard tin sizes with 25% less ground black pepper, leaving the rest of the space in the tin empty.

6.    Specifically, McCormick's small sized tin ("Small Tin") measuring approximately 3 1/16" tall, 1 5/16" deep, and 2 5/16" wide, currently holds 1.5 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Small Tin to capacity with 2 ounces of ground black pepper. Although the amount of ground pepper has been reduced by 25% since early 2015, the actual size of the Small Tin has, at all relevant times, remained the same.

7.    Similarly, McCormick's medium sized tin ("Medium Tin"), measuring approximately 3 10/16" tall, 1 9/16" deep, and 2 13/16" wide, currently holds 3 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Medium Tin to capacity with 4 ounces of ground black pepper. Although the amount of ground pepper has been reduced by 25% since early 2015, the actual size of the Medium Tin has, at all relevant times, remained the same.

8.    Finally, McCormick's larger sized tin ("Large Tin"), measuring approximately 4 10/16" tall, 2 4/16" deep, and 3 5/16" wide, currently holds 6 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Large Tin to capacity with 8 ounces of ground black pepper. Again, although the amount of ground pepper has been reduced by 25% since early 2015, the actual size of the Large Tin has, at all relevant times, remained the same.

9.    Ground black pepper sold in the Small Tin (holding 2 ounces), Medium Tin (holding 4 ounces), and Large Tin (holding 8 ounces) prior to 2015 are collectively referred to as

the "Full Products." Ground black pepper sold in the same size Small Tin (now holding 1.5 ounces), Medium Tin (now holding 3 ounces), and Large Tin (now holding 6 ounces) sold after early 2015 are referred to collectively as the "Reduced Products" or individually as a "Reduced Product."

10.     Filling the Reduced Products with 25% less ground black pepper without changing the size of the respective tins is unlawful, misleading and likely to deceive reasonable consumers.  Furthermore, there is no legal justification for Defendant's filling the Reduced Products with 25% less ground black pepper than it has, for decades, filled the Full Products.

11.     Plaintiff brings this action on behalf of herself and a nationwide class of consumers, as well as a sub-class of Illinois consumers, to rectify the injuries caused by McCormick's unlawful practices, and to enjoin McCormick's ongoing deceptive representations concerning the Reduced Products.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject-matter presented by this Class Action Complaint because it is a class action arising under 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and where the amount in controversy exceeds the aggregate sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of Illinois and Defendant is a publicly

traded Maryland corporation with its principal place of business located in Sparks, Maryland; therefore, diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(2)(A).

13.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased both the Full Products and the Reduced Products in this judicial district. Specifically, Plaintiff purchased the Full Products and Reduced Products in St. Clair County, Illinois.

## PARTIES

14.     Plaintiff, Scott Allan Bittle, is, and at all times relevant was, an individual residing in and a citizen of the State of Illinois.  Plaintiff has purchased the Full Products for personal use on multiple occasions for the past several years.

15.     Defendant is a Maryland corporation, with its principal place of business located in Sparks, Maryland.  Defendant promoted and marketed the Full Products and the Reduced Products at issue in this jurisdiction and in this venue.

16.     The unfair, unlawful packaging of the Reduced Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through unlawfully packaging the Reduced Products.

17.     At all times relevant, Defendant and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants, and employees of Defendant, and at all times relevant, each were acting within the purpose and scope of that agency and employment.  Plaintiff further alleges, on information and belief, that at all times relevant, the distributors and retailers who delivered and sold the Reduced Products, as well as

their respective employees, were also Defendant's agents, servants, and employees, and at all times relevant, each were acting within the purpose and scope of that agency and employment.

18.     Additionally, Plaintiff alleges that, in committing the wrongful acts alleged, Defendant, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Reduced Products.

19.     Whenever reference in this Complaint is made to any act by Defendant or its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified, and/or directed such act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

## FACTS

20.     Defendant currently sells ground black pepper in tins that are the same size as tins previously sold by Defendant for years, but now those same tins contain 25% less ground black pepper.  This action has deceived reasonable consumers, such as Plaintiff and the members of the putative Class, because reasonable consumers expect that the tins will contain the same amount of ground pepper as they had in years past.

21.     When Plaintiff purchased the Reduced Product in the Summer of 2015, he thought it contained the same amount of pepper as had been in the Full Products because the tin was the same size it had been in the past.

22.     On information and belief, retailers and consumers are misled into believing that they are buying a larger volume of ground black pepper than is contained in the McCormick Reduced Products.

23. Plaintiff has become accustomed to purchasing the Full Products because of their consistent and uniform size and the consistent and uniform amount of ground black pepper contained in the tins. However, in the Summer of 2015, Plaintiff purchased the Small Tin, Reduced Product for personal use, believing that it contained 2 ounces of ground black pepper, as all Small Tin Full Products contained that Plaintiff had purchased in the past. Subsequent to purchasing the Reduced Product, however, Plaintiff learned that Defendant had provided 25% less ground black pepper in it because of unlawful, unjustified slack-filling. Plaintiff would not have purchased the Reduced Product had he known that it contained 25% less ground black pepper than Full Products he purchased previously, or Plaintiff would not have paid what he did for the Reduced Product.

24. On information and belief, in many or most instances, McCormick intentionally maintained the price of its standard sized tins, notwithstanding the significant reduction in the amount of ground black pepper contained in the traditional tin, which had the effect of further adding to the perception that nothing had changed. It appears that millions, if not tens of millions, of these McCormick Reduced Products have replaced Full Products in virtually every retailer throughout the United States that sells McCormick products.

25. On information and belief, McCormick intentionally kept the tin the same size, with the same price, notwithstanding the 25% decrease in ground black pepper fill, in a manner that misleads retailers and consumers. Although the tins note in small print the actual weight of ground black pepper contained in the slack-filled tins, consumers are not otherwise told of the decrease in ground black pepper from the traditional fill or that the tin contains a significant void. Consumers rely upon the traditional size of the tins as the basis of making a purchasing decision and believe the tins are effectively full, as they have been for decades.

26.     Regardless, the Reduced Products are unlawful under federal law.


## FEDERAL LAW PROHIBITS SLACK-FILLING

27.     Food manufacturers are required to comply with state and federal statutes and

regulations pertaining to food containers, including the Food, Drug and Cosmetic Act ("FDCA"),

21 U.S.C. § 343, and its regulations regarding filling, as set forth in 21 C.F.R. 100.100.

28.     Specifically, section 403 (d) of the FDCA, 21 U.S.C. § 343(d) states that a food

container is misbranded if the "container is so made, formed, or filled as to be misleading."

29.     Section 403(d) of the FDCA is further explained by 21 C.F.R. § 100.100, which

prohibits nonfunctional "slack-filling."

30.     Specifically, 21 C.F.R. § 100.100 states:

> In accordance with section 403(d) of the act, a food shall be
> deemed to be misbranded if its container is so made, formed, or
> filled as to be misleading.
>
> (a) A container that does not allow the consumer to fully view its
> contents shall be considered to be filled as to be misleading if it
> contains nonfunctional slack-fill.   Slack-fill is the difference
> between the actual capacity of a container and the volume of
> product contained therein.   Nonfunctional slack-fill is the empty
> space in a package that is filled to less than its capacity for reasons
> other than:
>
> (1) Protection of the contents of the package;
>
> (2) The requirements of the machines used for enclosing the
> contents in such package;
>
> (3) Unavoidable product settling during shipping and handling;
>
> (4) The need for the package to perform a specific function (e.g.,
> where packaging plays a role in the preparation or consumption of

a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

31.     Under both federal and Illinois law, McCormick lacks any lawful justification for reducing the amount of pepper and leaving empty space in the Reduced Products.

32.     Each of the fifty states has statutes that prohibit deceptive business practices directed at consumers. Defendant's actions violate each of these statutes.

**DEFENDANT'S MISREPRESENTATIONS ARE MATERIAL TO CONSUMERS**

33.     Upon information and belief, for decades, and up until early 2015, Defendant substantially filled its Small Tins, Medium Tins, and Large Tins to capacity (*i.e.*, the Full Products).

34.     That changed in early 2015, when Defendant began filling its Small Tins, Medium Tins, and Large Tins with 75% of the ground black pepper it had included in those containers for decades (*i.e.,* the Reduced Products).

35.     A reasonable consumer would not expect the Reduced Products to contain 25% less ground black pepper than the Full Products because the Reduced Products and the Full Products are the same size and both sets of containers are opaque.

36.     A reasonable consumer would expect the Reduced Products to contain the same amount of ground black pepper as the Full Products and there is no legal justification for the Products not containing such amount.

37.     Whether the Reduced Products actually contain the same amount of pepper as the Full Products is important to Plaintiff and other reasonable consumers.

38.     The packaging for the Reduced Products was designed to encourage consumers to purchase the Reduced Products with the belief that the Reduced Products contain the same amount of ground black pepper as the Full Products.

39.     Reasonable consumers are likely to be deceived by the Reduced Products because although the Reduced Products are the same size as the Full Products, the Reduced Products actually contain 25% less ground pepper than the Full Products, but the consumer cannot see into either the Full Products or the Reduced Products because both sets of containers are opaque.

40.     As a result, Plaintiff purchased the Reduced Products instead of other similar products that are not unlawfully slack-filled.

41.     Plaintiff paid a price premium for the Reduced Products over other similar products that are not unlawfully slack-filled.

42.     Plaintiff and members of the Class relied upon Defendant's representations that the Reduced Products contain the same amount of black pepper as the Full Products because for decades Defendant had substantially filled the Full Products to capacity, creating the industry standard.

43. Plaintiff and members of the Class would not have purchased the Reduced Products if they had known the Reduced Products were unlawfully slack-filled, or would not have paid what they did for the Reduced Products.

44. Side-by-side, McCormick Small Tins and Medium Tins appear to be identical in size to the comparable tins made by other manufacturers, leading consumers to the reasonable assumption (and accurate until McCormick began slack-filling its full tins) that they contain the same quantity of pepper. In fact, the McCormick Reduced Products contain less ground pepper than the comparable tins made by other manufacturers.

## PLAINTIFF'S PURCHASE OF DEFENDANT'S PRODUCTS

45. Plaintiff purchased the Full Products on multiple occasions over the past several years and specifically, during the Class Period. Plaintiff purchased the Reduced Product from grocery stores located in St. Clair County, Illinois.

46. In purchasing the Reduced Products, Plaintiff saw, perceived, and relied on the packaging for them, namely, that the Reduced Products are the identical size of the Full Products and are opaque.

47. Plaintiff and members of the putative Class would not have purchased the Reduced Products, or would have paid less for them if they had known that the Reduced Products contain 25% ground black pepper than the Full Products.

48. Consequently, the Reduced Products are worth less than what Plaintiff paid for and/or Plaintiff did not receive what he reasonably believed she was buying.

49. McCormick was able to command a price for the Reduced Products higher than a fair market price by deceiving consumers into believing the Reduced Products contained 25% more ground black pepper than they actually do or did.

50. Plaintiff and the Class have lost money or property as a result of Defendant's unlawful, unjustified slack-filling the Reduced Products.

## CLASS ALLEGATIONS

51. Plaintiff incorporates by reference the allegations set forth above in this Complaint.

52. Plaintiff brings all claims as an individual and as representative of a Class of persons, pursuant to Rule 23 of the Federal Rules of Civil Procedure, who fall within one of the following two subclasses:

    a) Persons and consumers in Illinois who purchased McCormick's Reduced Products for personal use (hereinafter "Subclass 1"); and

    b) All other persons and consumers in the United States who purchased McCormick's Reduced Products for personal use pet food (hereinafter "Subclass 2").

53. Plaintiff seeks certification of a class action for Subclass 1 for Counts I, II, and III, and for Subclass 2 for Counts II, III and IV.

54. Plaintiff also states alternative causes of action under the laws of the other states of residence of class members having consumer fraud laws prohibiting the unlawful conduct specified herein.

55. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal

representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff. Plaintiff reserves the right to amend the Class definition if further information and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

56.     This action is maintainable as a class action under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

57.     Numerosity: The Class comprises many thousands of persons throughout the nation. The class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a single Class Action will benefit the parties and the court system.

58.     Commonality: The questions of law and fact common to the Class have the capacity to generate common answers that will drive resolution of the action. Common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendant's practices related to the amount of pepper in the Reduced Products were unfair, deceptive, and/or unlawful in any respect, thereby violating 21 C.F.R. § 100.100, the ICFA, and the corresponding statutes of each of the other states as referenced above;

b.     Whether Defendant's practices and representations related to the sales of the Reduced Products were unfair, deceptive, and/or unlawful in any respect, thereby violating 21 C.F.R. § 100.100, the ICFA, and the corresponding statutes of each of the other states as referenced above;

c. Whether Defendant's practices and representations related to the filling, marketing, and sales of the Reduced Products constituted fraudulent or misleading concealment;

d. Whether Defendant's practices and representations related to the filling, marketing, and sales of the Reduced Products constituted a breach of warranty for merchantability;

e. Whether Defendant's practices and representations related to the filling, marketing, and sales of the Reduced Products constituted a breach of express warranty;

f. Whether Defendant violated 21 C.F.R. § 100.100, *et seq.*, with its practices and representations related to the sales of the Reduced Products; and

g. Whether Defendant's conduct, as set forth above, injured consumers, and if so, the extent of the injury.

59. Typicality:  Plaintiff's claims, and Defendant's defenses, are typical of the claims of the Class, because the Reduced Products made by Defendant are consistent and uniform in size and every member of the Class was necessarily exposed to the same in purchasing the Reduced Products that all contained 25% less ground black pepper than the Full Products contained, even though the Full Products are the same size as the Reduced Products. Additionally, all Members of the Class have the same or similar injury (loss of purchase price) based on Defendant's false and misleading marketing and advertising.

60. Adequacy:  Plaintiff does not have any conflicts with any other Members of the Class, and will fairly and adequately represent and protect the interests of the Members of the

Plaintiff Class and any subclass. Plaintiff has retained counsel competent and experienced in consumer protection and class action litigation.

61. Predominance: As set forth in detail, common issues of fact and law predominate because all of Plaintiff's claims are based on a uniform and consistent unlawful, unjustified slack-filling, which all Class Members necessarily were exposed to in purchasing the Reduced Products, namely the packaging of the Reduced Products being the same size as the Full Products, even though the Reduced Products contain 25% less ground black pepper than the Full Products.

62. Superiority: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of the individual litigation would make it impracticable or impossible for the Class Members to prosecute their claims individually. Absent a class action, Defendant likely will retain the benefits of its wrongdoing. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for these wrongs. Absent a representative action, the Class Members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform court judgment. Thus, the benefits of proceeding as a class action outweigh the difficulties.

## COUNT I – DAMAGES FOR VIOLATION OF 815 ILCS 505/1 *ET SEQ.*, (THE "ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT" OR "ICFA") (on behalf of subclass 1)

63.     Plaintiff incorporates by reference all preceding paragraphs of this petition as if fully set forth herein.

64.     Plaintiff brings this claim individually and on behalf of the Class against Defendant.

65.     815 ILCS 505/2 provides the following:

[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

66.     This claim is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendant.  Defendant's business practices in its advertising, marketing, packaging, labeling and sales of its products is an unconscionable, unfair, and deceptive act or practice and constitutes multiple, separate violations of Mo. Rev. Stat. § 407.020 because Defendant's Reduced Products, like its Full Products are opaque, standard sized containers that consumers cannot see into and Defendant exploited this fact by including 25% less ground pepper than it had included in the Full Products for decades, which are the same size as the Reduced Products.

67.     Because the tins are opaque, Plaintiff was unable to tell that they are now at least 25% empty.

68.     Defendant's unjustified slack-filling the Reduced Products is a material fact and constitutes an unfair practice within the meaning of the ICFA.

69.     Defendant's concealment, suppression, misrepresentations and/or omission as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Illinois Subclass regarding Defendant's products.

70.     In violation of the ICFA, Defendant employed fraud, deception, false promise, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts in its sale and advertisement of Defendant's products in the State of Illinois.

71.     Defendant engaged in the concealment, suppression, misrepresentations and/or omission of the aforementioned material facts with the intent that others, such as Plaintiff, the Illinois Subclass, and/or the general public would rely upon the concealment, suppression, misrepresentation and/or omission of such material facts and purchase Defendant's products.

72.     As a result of their purchase of Defendant's products, Plaintiffs and the members of the Illinois Subclass sustained ascertainable loss and damage in that, among other things, Defendant reduced the amount of ground black pepper contained in the Reduced Products by 25% relative to the Full Products, even though the Full Products and the Reduced Products are the same size and are both opaque.

73.     Plaintiff and the members of the Illinois Subclass are entitled to recover their actual damages, attorneys' fees, and injunctive or other equitable relief, pursuant to Illinois law, including 815 ILCS 505/1 *ET SEQ.*

74.     Furthermore, Defendant's unlawful conduct set forth in this Complaint was and is outrageous because of Defendant's evil motive or reckless indifference to and conscious disregard of the rights of others and for the rights of Plaintiff and members of the Illinois

Subclass and warrants an award of punitive damages to deter Defendant, and others in similar circumstances, from committing such actions in the future.

75.    Defendant's practices, as alleged, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Defendant intentionally misled the consuming public by means of the claims made with respect to the Reduced Products as set forth herein.

76.    Defendant's business practices as alleged are misleading because they are likely to deceive customers into believing that the Reduced Products provide more ground black pepper than they actually do.

77.    There is no lawful justification under either federal or Illinois law for Defendant's slack-filling the Reduced Products.

78.    Plaintiff and the putative Class Members were misled into purchasing the Reduced Products by Defendant's unfair and misleading conduct.

79.    The Reduced Products are identical in size to their corresponding Full Products and yet the Reduced Products contain 25% less ground black pepper than the Full Products. These representations are uniform and material to each Reduced Product.

## COUNT II - FOR FRAUDULENT CONCEALMENT

80.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

81.    Defendant has manufactured, marketed, and, and sold the Full Products for decades, and was so successful that Defendant's Full Products have become the industry standard.

82.   Consumers have become accustomed to Defendant's standardized Full Products' sizes and have relied and continue to rely on Defendant supplying a certain, predictable amount of ground black pepper in each such container.

83.   However, in early 2015, Defendant began filling its standardized, opaque containers with 25% less ground black pepper, in violation of federal and state law prohibiting unjustified slack-filling.

84.   Reasonable consumers, such as Plaintiff and members of the Class, are misled into believing that the Reduced Products contain 25% more ground black pepper than they currently do because the Reduced Products' containers are the same size as the Full Products' containers, and both are opaque.

85.   The Reduced Products' containers were not only intentionally made to be the same size as the Full Products' containers but they, like their Full Products counterparts, were made to be opaque, such that reasonable consumers cannot see inside them; thus, Defendant was able to surreptitiously provide 25% less ground black pepper to the consuming public without the knowledge of Plaintiff or members of the Class, and at a substantial windfall for Defendant.

86.   Consequently, Plaintiff and members of the Class were injured as a result of Defendant concealing that it provided 25% less ground black pepper to them without reducing the price proportionately.

## COUNT III – UNJUST ENRICHMENT

87.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

88.   Plaintiff and the Class members conferred upon Defendant benefits that were non-gratuitous and constitute unjust takings.

89. Defendant accepted or retained the benefits conferred by Plaintiff and Class despite Defendant's deceptive advertising, material misrepresentations, omissions of material fact and/or fraudulent conduct with regard to the quantity of pepper contained in its products.

90. Retaining the benefits conferred upon Defendant by Plaintiff and Class under these circumstances makes Defendant's retention of the benefits unjust and inequitable.

91. As a result of the foregoing, Plaintiff and Class have suffered damages, as set forth more fully above.

92. Because Defendant's retention of the benefits conferred by Plaintiff and Class is unjust and inequitable, Defendant must pay restitution in a manner established by the Court.

## COUNT IV – VIOLATION OF THE CONSUMER FRAUD LAWS OF THE SEVERAL STATES OTHER THAN ILLINOIS
### (on behalf of Subclass 2)

93. Plaintiff incorporates by reference all preceding paragraphs of this petition as if fully set forth herein.

94. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

95. Defendant has engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

96. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE § 8.19-1, *et seq.*

97. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE § 45.50.471, *et seq.*

98. Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of ARIZ. REV. STAT. § 44-1522, *et seq.*

99.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-107, *et seq.*

100.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of CAL.BUS. & PROF CODE § 17200, *et. seq.,* § 17500, *et seq.*, and CAL.CIV.CODE § 1750, *et. seq.*

101.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-101, *et seq.*

102.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, *et seq.*

103.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, *et seq.*

104.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, *et seq.*

105.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN. § 501.201, *et seq.*

106.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, *et seq.*

107.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, *et seq.*

108.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, *et seq.*

109. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, *et seq.*

110. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE § 714.16, *et seq.*

111. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of KAN. STAT. § 50-623, *et seq.*

112. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, *et seq.*

113. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. § 51:1404, *et seq.*

114. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, *et seq.*

115. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE. ANN., COM. LAW § 13-101, *et seq.*

116. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, §1, *et seq.*

117. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901, *et seq.*

118. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, *et seq.*

119. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MISS. CODE ANN. § 75-24-3, *et seq.*

120. Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of MO. REV. STAT. § 407.010, *et seq.*

121.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE ANN. § 30-14-101, *et seq.*

122.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, *et seq.*

123.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. § 598.0903, *et seq.*

124.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, *et seq.*

125.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J.S.A. 56:8-1, *et seq.*

126.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, *et seq.*

127.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, *et seq.*

128.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, *et seq.*

129.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, *et seq.*

130.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, *et seq.*

131.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, *et seq.*

132.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, *et seq.*

133.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE § 39-5-10, *et seq.*

134.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, *et seq.*

135.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, *et seq.*

136.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*

137.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, *et seq.*

138.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, *et seq.*

139.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, *et seq.*

140.   Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*

141.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE § 46A-6-101, *et seq.*

142.   Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, *et seq.*

143.   Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of WYO. STAT. ANN. § 40-12-101, *et seq*.

144. The acts, practices, misrepresentations and omissions by Defendant described Above constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions, and each of these statutes also prohibits the sale of products which are prohibited by law.

145. Plaintiff and Class members suffered a loss of money as a result of Defendant's misrepresentations because: (a) they would not have purchased the pet foods on the same terms if the true facts regarding its ingredients had been known; (b) they paid an unfair price premium due to the misrepresentations concerning the ingredients; and (c) the pet food in fact contained ingredients which Defendant misrepresented were not contained in the pet food, which rendered the pet food's value less than that paid by Plaintiff and Class members.

146. As a result of the foregoing, Plaintiff and Class have suffered damages, as set forth more fully above.

WHEREFORE, Plaintiff and Class pray for the relief requested in the Request for Relief set forth below in this Petition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Scott Allan Bittle, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth, as follows:

1. For an order certifying that the action may be maintained as a class action, and appointing Plaintiff and her attorneys to represent the Class;

2. For an order enjoining Defendant from engaging in the practices set forth;

3. For an order compelling Defendant to conduct a corrective advertising campaign;

4.  For an order requiring Defendant to disgorge or return all money, revenue, and profits obtained by means of any wrongful act or practice alleged;

5.  For an order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unfair business act or practice, untrue, or misleading advertising, or unjust enrichment, or violation of the ICFA;

6.  For an order awarding Plaintiff and the Illinois Sub-Class punitive damages;

7.  For an award of attorney's fees, costs and expenses; and

8.  Any other and further relief as the Court deems necessary, just, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint will be mailed to the Attorney General of the State of Illinois pursuant to 815 ILCS 505/10(a).

Respectfully Submitted,

By:   /s Sean K. Cronin
**DONOVAN ROSE NESTER, P.C.**
Sean K. Cronin. #06292624
Donovan Rose Nester, P.C.
210 South Illinois Street
Belleville, Illinois 62220
P. (618) 212-6500
F. (618 212-6501
scronin@drnpc.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

**SCOTT ALLAN BITTLE,** individually, and on
behalf of all others similarly situated,

     *Plaintiff,*

v.

**MCCORMICK & CO., INC.,**

     *Defendant.*

Cause No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Scott Allan Bittle ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through undersigned counsel, brings this Class Action Complaint against Defendant, McCormick & Co., Inc., ("McCormick" or "Defendant"), and alleges the following:

### NATURE OF THE CASE

1.     This case is about unlawful slack-filling.

2.     McCormick manufactures, packages, advertises, distributes, and sells McCormick® Pure Ground Black Pepper.

3.     Over the past several years, Plaintiff has become accustomed to purchasing Defendant's products because of their consistent and uniform size and the consistent and uniform amount of ground black pepper contained in the tins. However, Plaintiff recently learned that Defendant has been providing 25% less ground black pepper in Defendant's products due to unlawful, unjustified slack-filling.

4.     Upon information and belief, for decades, McCormick has sold its ground black pepper in opaque metal tins, which had been substantially filled to capacity and which had become the industry standard.

5.     Upon information and belief, at the beginning of 2015, McCormick began filling at least three of its standard tin sizes with 25% less ground black pepper, leaving the rest of the space in the tin empty.

6.     Specifically, McCormick's small sized tin ("Small Tin") measuring approximately 3 1/16" tall, 1 5/16" deep, and 2 5/16" wide, currently holds 1.5 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Small Tin to capacity with 2 ounces of ground black pepper. Although the amount of ground pepper has been reduced by 25% since early 2015, the actual size of the Small Tin has, at all relevant times, remained the same.

7.     Similarly, McCormick's medium sized tin ("Medium Tin"), measuring approximately 3 10/16" tall, 1 9/16" deep, and 2 13/16" wide, currently holds 3 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Medium Tin to capacity with 4 ounces of ground black pepper. Although the amount of ground pepper has been reduced by 25% since early 2015, the actual size of the Medium Tin has, at all relevant times, remained the same.

8.     Finally, McCormick's larger sized tin ("Large Tin"), measuring approximately 4 10/16" tall, 2 4/16" deep, and 3 5/16" wide, currently holds 6 ounces of ground black pepper. Prior to early 2015, however, McCormick substantially filled the Large Tin to capacity with 8 ounces of ground black pepper. Again, although the amount of ground pepper has been reduced by 25% since early 2015, the actual size of the Large Tin has, at all relevant times, remained the same.

9.     Ground black pepper sold in the Small Tin (holding 2 ounces), Medium Tin (holding 4 ounces), and Large Tin (holding 8 ounces) prior to 2015 are collectively referred to as

the "Full Products." Ground black pepper sold in the same size Small Tin (now holding 1.5 ounces), Medium Tin (now holding 3 ounces), and Large Tin (now holding 6 ounces) sold after early 2015 are referred to collectively as the "Reduced Products" or individually as a "Reduced Product."

10.     Filling the Reduced Products with 25% less ground black pepper without changing the size of the respective tins is unlawful, misleading and likely to deceive reasonable consumers.  Furthermore, there is no legal justification for Defendant's filling the Reduced Products with 25% less ground black pepper than it has, for decades, filled the Full Products.

11.     Plaintiff brings this action on behalf of herself and a nationwide class of consumers, as well as a sub-class of Illinois consumers, to rectify the injuries caused by McCormick's unlawful practices, and to enjoin McCormick's ongoing deceptive representations concerning the Reduced Products.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject-matter presented by this Class Action Complaint because it is a class action arising under 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and where the amount in controversy exceeds the aggregate sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2).  Plaintiff is a citizen of Illinois and Defendant is a publicly

traded Maryland corporation with its principal place of business located in Sparks, Maryland; therefore, diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(2)(A).

13.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased both the Full Products and the Reduced Products in this judicial district. Specifically, Plaintiff purchased the Full Products and Reduced Products in St. Clair County, Illinois.

## PARTIES

14.     Plaintiff, Scott Allan Bittle, is, and at all times relevant was, an individual residing in and a citizen of the State of Illinois.  Plaintiff has purchased the Full Products for personal use on multiple occasions for the past several years.

15.     Defendant is a Maryland corporation, with its principal place of business located in Sparks, Maryland.  Defendant promoted and marketed the Full Products and the Reduced Products at issue in this jurisdiction and in this venue.

16.     The unfair, unlawful packaging of the Reduced Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through unlawfully packaging the Reduced Products.

17.     At all times relevant, Defendant and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants, and employees of Defendant, and at all times relevant, each were acting within the purpose and scope of that agency and employment.  Plaintiff further alleges, on information and belief, that at all times relevant, the distributors and retailers who delivered and sold the Reduced Products, as well as

their respective employees, were also Defendant's agents, servants, and employees, and at all times relevant, each were acting within the purpose and scope of that agency and employment.

18.    Additionally, Plaintiff alleges that, in committing the wrongful acts alleged, Defendant, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Reduced Products.

19.    Whenever reference in this Complaint is made to any act by Defendant or its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified, and/or directed such act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

## FACTS

20.    Defendant currently sells ground black pepper in tins that are the same size as tins previously sold by Defendant for years, but now those same tins contain 25% less ground black pepper. This action has deceived reasonable consumers, such as Plaintiff and the members of the putative Class, because reasonable consumers expect that the tins will contain the same amount of ground pepper as they had in years past.

21.    When Plaintiff purchased the Reduced Product in the Summer of 2015, he thought it contained the same amount of pepper as had been in the Full Products because the tin was the same size it had been in the past.

22.    On information and belief, retailers and consumers are misled into believing that they are buying a larger volume of ground black pepper than is contained in the McCormick Reduced Products.

23. Plaintiff has become accustomed to purchasing the Full Products because of their consistent and uniform size and the consistent and uniform amount of ground black pepper contained in the tins. However, in the Summer of 2015, Plaintiff purchased the Small Tin, Reduced Product for personal use, believing that it contained 2 ounces of ground black pepper, as all Small Tin Full Products contained that Plaintiff had purchased in the past. Subsequent to purchasing the Reduced Product, however, Plaintiff learned that Defendant had provided 25% less ground black pepper in it because of unlawful, unjustified slack-filling. Plaintiff would not have purchased the Reduced Product had he known that it contained 25% less ground black pepper than Full Products he purchased previously, or Plaintiff would not have paid what he did for the Reduced Product.

24. On information and belief, in many or most instances, McCormick intentionally maintained the price of its standard sized tins, notwithstanding the significant reduction in the amount of ground black pepper contained in the traditional tin, which had the effect of further adding to the perception that nothing had changed. It appears that millions, if not tens of millions, of these McCormick Reduced Products have replaced Full Products in virtually every retailer throughout the United States that sells McCormick products.

25. On information and belief, McCormick intentionally kept the tin the same size, with the same price, notwithstanding the 25% decrease in ground black pepper fill, in a manner that misleads retailers and consumers. Although the tins note in small print the actual weight of ground black pepper contained in the slack-filled tins, consumers are not otherwise told of the decrease in ground black pepper from the traditional fill or that the tin contains a significant void. Consumers rely upon the traditional size of the tins as the basis of making a purchasing decision and believe the tins are effectively full, as they have been for decades.

26.     Regardless, the Reduced Products are unlawful under federal law.


## FEDERAL LAW PROHIBITS SLACK-FILLING

27.     Food manufacturers are required to comply with state and federal statutes and

regulations pertaining to food containers, including the Food, Drug and Cosmetic Act ("FDCA"),

21 U.S.C. § 343, and its regulations regarding filling, as set forth in 21 C.F.R. 100.100.

28.     Specifically, section 403 (d) of the FDCA, 21 U.S.C. § 343(d) states that a food

container is misbranded if the "container is so made, formed, or filled as to be misleading."

29.     Section 403(d) of the FDCA is further explained by 21 C.F.R. § 100.100, which

prohibits nonfunctional "slack-filling."

30.     Specifically, 21 C.F.R. § 100.100 states:

> In accordance with section 403(d) of the act, a food shall be
> deemed to be misbranded if its container is so made, formed, or
> filled as to be misleading.
>
> (a) A container that does not allow the consumer to fully view its
> contents shall be considered to be filled as to be misleading if it
> contains nonfunctional slack-fill.    Slack-fill is the difference
> between the actual capacity of a container and the volume of
> product contained therein.    Nonfunctional slack-fill is the empty
> space in a package that is filled to less than its capacity for reasons
> other than:
>
> (1) Protection of the contents of the package;
>
> (2)  The requirements of the machines used for enclosing the
> contents in such package;
>
> (3)  Unavoidable product settling during shipping and handling;
>
> (4)  The need for the package to perform a specific function (e.g.,
> where packaging plays a role in the preparation or consumption of

a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

31.    Under both federal and Illinois law, McCormick lacks any lawful justification for reducing the amount of pepper and leaving empty space in the Reduced Products.

32.    Each of the fifty states has statutes that prohibit deceptive business practices directed at consumers.  Defendant's actions violate each of these statutes.

**DEFENDANT'S MISREPRESENTATIONS ARE MATERIAL TO CONSUMERS**

33.    Upon information and belief, for decades, and up until early 2015, Defendant substantially filled its Small Tins, Medium Tins, and Large Tins to capacity (*i.e.*, the Full Products).

34.    That changed in early 2015, when Defendant began filling its Small Tins, Medium Tins, and Large Tins with 75% of the ground black pepper it had included in those containers for decades (*i.e.,* the Reduced Products).

35.     A reasonable consumer would not expect the Reduced Products to contain 25% less ground black pepper than the Full Products because the Reduced Products and the Full Products are the same size and both sets of containers are opaque.

36.     A reasonable consumer would expect the Reduced Products to contain the same amount of ground black pepper as the Full Products and there is no legal justification for the Products not containing such amount.

37.     Whether the Reduced Products actually contain the same amount of pepper as the Full Products is important to Plaintiff and other reasonable consumers.

38.     The packaging for the Reduced Products was designed to encourage consumers to purchase the Reduced Products with the belief that the Reduced Products contain the same amount of ground black pepper as the Full Products.

39.     Reasonable consumers are likely to be deceived by the Reduced Products because although the Reduced Products are the same size as the Full Products, the Reduced Products actually contain 25% less ground pepper than the Full Products, but the consumer cannot see into either the Full Products or the Reduced Products because both sets of containers are opaque.

40.     As a result, Plaintiff purchased the Reduced Products instead of other similar products that are not unlawfully slack-filled.

41.     Plaintiff paid a price premium for the Reduced Products over other similar products that are not unlawfully slack-filled.

42.     Plaintiff and members of the Class relied upon Defendant's representations that the Reduced Products contain the same amount of black pepper as the Full Products because for decades Defendant had substantially filled the Full Products to capacity, creating the industry standard.

43.     Plaintiff and members of the Class would not have purchased the Reduced Products if they had known the Reduced Products were unlawfully slack-filled, or would not have paid what they did for the Reduced Products.

44.     Side-by-side, McCormick Small Tins and Medium Tins appear to be identical in size to the comparable tins made by other manufacturers, leading consumers to the reasonable assumption (and accurate until McCormick began slack-filling its full tins) that they contain the same quantity of pepper.  In fact, the McCormick Reduced Products contain less ground pepper than the comparable tins made by other manufacturers.

## PLAINTIFF'S PURCHASE OF DEFENDANT'S PRODUCTS

45.     Plaintiff purchased the Full Products on multiple occasions over the past several years and specifically, during the Class Period.  Plaintiff purchased the Reduced Product from grocery stores located in St. Clair County, Illinois.

46.     In purchasing the Reduced Products, Plaintiff saw, perceived, and relied on the packaging for them, namely, that the Reduced Products are the identical size of the Full Products and are opaque.

47.     Plaintiff and members of the putative Class would not have purchased the Reduced Products, or would have paid less for them if they had known that the Reduced Products contain 25% ground black pepper than the Full Products.

48.     Consequently, the Reduced Products are worth less than what Plaintiff paid for and/or Plaintiff did not receive what he reasonably believed she was buying.

49. McCormick was able to command a price for the Reduced Products higher than a fair market price by deceiving consumers into believing the Reduced Products contained 25% more ground black pepper than they actually do or did.

50. Plaintiff and the Class have lost money or property as a result of Defendant's unlawful, unjustified slack-filling the Reduced Products.

## CLASS ALLEGATIONS

51. Plaintiff incorporates by reference the allegations set forth above in this Complaint.

52. Plaintiff brings all claims as an individual and as representative of a Class of persons, pursuant to Rule 23 of the Federal Rules of Civil Procedure, who fall within one of the following two subclasses:

a) Persons and consumers in Illinois who purchased McCormick's Reduced Products for personal use (hereinafter "Subclass 1"); and

b) All other persons and consumers in the United States who purchased McCormick's Reduced Products for personal use pet food (hereinafter "Subclass 2").

53. Plaintiff seeks certification of a class action for Subclass 1 for Counts I, II, and III, and for Subclass 2 for Counts II, III and IV.

54. Plaintiff also states alternative causes of action under the laws of the other states of residence of class members having consumer fraud laws prohibiting the unlawful conduct specified herein.

55. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal

representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter, and the members of their immediate families and judicial staff.  Plaintiff reserves the right to amend the Class definition if further information and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

56.     This action is maintainable as a class action under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

57.     Numerosity:  The Class comprises many thousands of persons throughout the nation.  The class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a single Class Action will benefit the parties and the court system.

58.     Commonality:  The questions of law and fact common to the Class have the capacity to generate common answers that will drive resolution of the action.  Common questions of law and fact include, but are not limited to, the following:

    a.  Whether Defendant's practices related to the amount of pepper in the Reduced Products were unfair, deceptive, and/or unlawful in any respect, thereby violating 21 C.F.R. § 100.100, the ICFA, and the corresponding statutes of each of the other states as referenced above;

    b.  Whether Defendant's practices and representations related to the sales of the Reduced Products were unfair, deceptive, and/or unlawful in any respect, thereby violating 21 C.F.R. § 100.100, the ICFA, and the corresponding statutes of each of the other states as referenced above;

c. Whether Defendant's practices and representations related to the filling, marketing, and sales of the Reduced Products constituted fraudulent or misleading concealment;

d. Whether Defendant's practices and representations related to the filling, marketing, and sales of the Reduced Products constituted a breach of warranty for merchantability;

e. Whether Defendant's practices and representations related to the filling, marketing, and sales of the Reduced Products constituted a breach of express warranty;

f. Whether Defendant violated 21 C.F.R. § 100.100, *et seq*., with its practices and representations related to the sales of the Reduced Products; and

g. Whether Defendant's conduct, as set forth above, injured consumers, and if so, the extent of the injury.

59.    Typicality:  Plaintiff's claims, and Defendant's defenses, are typical of the claims of the Class, because the Reduced Products made by Defendant are consistent and uniform in size and every member of the Class was necessarily exposed to the same in purchasing the Reduced Products that all contained 25% less ground black pepper than the Full Products contained, even though the Full Products are the same size as the Reduced Products. Additionally, all Members of the Class have the same or similar injury (loss of purchase price) based on Defendant's false and misleading marketing and advertising.

60.    Adequacy:  Plaintiff does not have any conflicts with any other Members of the Class, and will fairly and adequately represent and protect the interests of the Members of the

Plaintiff Class and any subclass. Plaintiff has retained counsel competent and experienced in consumer protection and class action litigation.

61. Predominance: As set forth in detail, common issues of fact and law predominate because all of Plaintiff's claims are based on a uniform and consistent unlawful, unjustified slack-filling, which all Class Members necessarily were exposed to in purchasing the Reduced Products, namely the packaging of the Reduced Products being the same size as the Full Products, even though the Reduced Products contain 25% less ground black pepper than the Full Products.

62. Superiority: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of the individual litigation would make it impracticable or impossible for the Class Members to prosecute their claims individually. Absent a class action, Defendant likely will retain the benefits of its wrongdoing. Because of the small size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for these wrongs. Absent a representative action, the Class Members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform court judgment. Thus, the benefits of proceeding as a class action outweigh the difficulties.

## COUNT I – DAMAGES FOR VIOLATION OF 815 ILCS 505/1 *ET SEQ.*, (THE "ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT" OR "ICFA") (on behalf of subclass 1)

63.     Plaintiff incorporates by reference all preceding paragraphs of this petition as if fully set forth herein.

64.     Plaintiff brings this claim individually and on behalf of the Class against Defendant.

65.     815 ILCS 505/2 provides the following:

[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

66.     This claim is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendant.  Defendant's business practices in its advertising, marketing, packaging, labeling and sales of its products is an unconscionable, unfair, and deceptive act or practice and constitutes multiple, separate violations of Mo. Rev. Stat. § 407.020 because Defendant's Reduced Products, like its Full Products are opaque, standard sized containers that consumers cannot see into and Defendant exploited this fact by including 25% less ground pepper than it had included in the Full Products for decades, which are the same size as the Reduced Products.

67.     Because the tins are opaque, Plaintiff was unable to tell that they are now at least 25% empty.

68.     Defendant's unjustified slack-filling the Reduced Products is a material fact and constitutes an unfair practice within the meaning of the ICFA.

69. Defendant's concealment, suppression, misrepresentations and/or omission as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Illinois Subclass regarding Defendant's products.

70. In violation of the ICFA, Defendant employed fraud, deception, false promise, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts in its sale and advertisement of Defendant's products in the State of Illinois.

71. Defendant engaged in the concealment, suppression, misrepresentations and/or omission of the aforementioned material facts with the intent that others, such as Plaintiff, the Illinois Subclass, and/or the general public would rely upon the concealment, suppression, misrepresentation and/or omission of such material facts and purchase Defendant's products.

72. As a result of their purchase of Defendant's products, Plaintiffs and the members of the Illinois Subclass sustained ascertainable loss and damage in that, among other things, Defendant reduced the amount of ground black pepper contained in the Reduced Products by 25% relative to the Full Products, even though the Full Products and the Reduced Products are the same size and are both opaque.

73. Plaintiff and the members of the Illinois Subclass are entitled to recover their actual damages, attorneys' fees, and injunctive or other equitable relief, pursuant to Illinois law, including 815 ILCS 505/1 *ET SEQ.*

74. Furthermore, Defendant's unlawful conduct set forth in this Complaint was and is outrageous because of Defendant's evil motive or reckless indifference to and conscious disregard of the rights of others and for the rights of Plaintiff and members of the Illinois

Subclass and warrants an award of punitive damages to deter Defendant, and others in similar circumstances, from committing such actions in the future.

75. Defendant's practices, as alleged, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Defendant intentionally misled the consuming public by means of the claims made with respect to the Reduced Products as set forth herein.

76. Defendant's business practices as alleged are misleading because they are likely to deceive customers into believing that the Reduced Products provide more ground black pepper than they actually do.

77. There is no lawful justification under either federal or Illinois law for Defendant's slack-filling the Reduced Products.

78. Plaintiff and the putative Class Members were misled into purchasing the Reduced Products by Defendant's unfair and misleading conduct.

79. The Reduced Products are identical in size to their corresponding Full Products and yet the Reduced Products contain 25% less ground black pepper than the Full Products. These representations are uniform and material to each Reduced Product.

## COUNT II - FOR FRAUDULENT CONCEALMENT

80. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

81. Defendant has manufactured, marketed, and, and sold the Full Products for decades, and was so successful that Defendant's Full Products have become the industry standard.

82.     Consumers have become accustomed to Defendant's standardized Full Products' sizes and have relied and continue to rely on Defendant supplying a certain, predictable amount of ground black pepper in each such container.

83.     However, in early 2015, Defendant began filling its standardized, opaque containers with 25% less ground black pepper, in violation of federal and state law prohibiting unjustified slack-filling.

84.     Reasonable consumers, such as Plaintiff and members of the Class, are misled into believing that the Reduced Products contain 25% more ground black pepper than they currently do because the Reduced Products' containers are the same size as the Full Products' containers, and both are opaque.

85.     The Reduced Products' containers were not only intentionally made to be the same size as the Full Products' containers but they, like their Full Products counterparts, were made to be opaque, such that reasonable consumers cannot see inside them; thus, Defendant was able to surreptitiously provide 25% less ground black pepper to the consuming public without the knowledge of Plaintiff or members of the Class, and at a substantial windfall for Defendant.

86.     Consequently, Plaintiff and members of the Class were injured as a result of Defendant concealing that it provided 25% less ground black pepper to them without reducing the price proportionately.

## COUNT III – UNJUST ENRICHMENT

87.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

88.     Plaintiff and the Class members conferred upon Defendant benefits that were non-gratuitous and constitute unjust takings.

89.    Defendant accepted or retained the benefits conferred by Plaintiff and Class despite Defendant's deceptive advertising, material misrepresentations, omissions of material fact and/or fraudulent conduct with regard to the quantity of pepper contained in its products.

90.    Retaining the benefits conferred upon Defendant by Plaintiff and Class under these circumstances makes Defendant's retention of the benefits unjust and inequitable.

91.    As a result of the foregoing, Plaintiff and Class have suffered damages, as set forth more fully above.

92.    Because Defendant's retention of the benefits conferred by Plaintiff and Class is unjust and inequitable, Defendant must pay restitution in a manner established by the Court.

## COUNT IV – VIOLATION OF THE CONSUMER FRAUD LAWS OF THE SEVERAL STATES OTHER THAN ILLINOIS
### (on behalf of Subclass 2)

93.    Plaintiff incorporates by reference all preceding paragraphs of this petition as if fully set forth herein.

94.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

95.    Defendant has engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

96.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE § 8.19-1, *et seq.*

97.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE § 45.50.471, *et seq.*

98.    Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of ARIZ. REV. STAT. § 44-1522, *et seq.*

99.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-107, *et seq.*

100.     Defendant has engaged in unfair competition, unfair or deceptive acts or practices and false advertising in violation of CAL.BUS. & PROF CODE § 17200, *et. seq.,* § 17500, *et seq.,* and CAL.CIV.CODE § 1750, *et. seq.*

101.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-101, *et seq.*

102.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, *et seq.*

103.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, *et seq.*

104.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, *et seq.*

105.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN. § 501.201, *et seq.*

106.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, *et seq.*

107.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, *et seq.*

108.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, *et seq.*

109.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, *et seq.*

110.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE § 714.16, *et seq.*

111.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of KAN. STAT. § 50-623, *et seq.*

112.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, *et seq.*

113.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. § 51:1404, *et seq.*

114.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, *et seq.*

115.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE. ANN., COM. LAW § 13-101, *et seq.*

116.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, §1, *et seq.*

117.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901, *et seq.*

118.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, *et seq.*

119.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MISS. CODE ANN. § 75-24-3, *et seq.*

120.     Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of MO. REV. STAT. § 407.010, *et seq.*

121.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE ANN. § 30-14-101, *et seq.*

122.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, *et seq.*

123.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. § 598.0903, *et seq.*

124.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, *et seq.*

125.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J.S.A. 56:8-1, *et seq.*

126.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, *et seq.*

127.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, *et seq.*

128.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, *et seq.*

129.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, *et seq.*

130.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, *et seq.*

131.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, *et seq.*

132.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, *et seq.*

133.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE § 39-5-10, *et seq.*

134.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, *et seq.*

135.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, *et seq.*

136.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*

137.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, *et seq.*

138.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, *et seq.*

139.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, *et seq.*

140.     Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*

141.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE § 46A-6-101, *et seq.*

142.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, *et seq.*

143.     Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of WYO. STAT. ANN. § 40-12-101, *et seq*.

144.    The acts, practices, misrepresentations and omissions by Defendant described
Above constitute unfair methods of competition and unfair or deceptive acts or practices
within the meaning of each of the above-enumerated statutes, because each of these statutes
generally prohibits deceptive conduct in consumer transactions, and each of these statutes also
prohibits the sale of products which are prohibited by law.

145.    Plaintiff and Class members suffered a loss of money as a result of Defendant's
misrepresentations because: (a) they would not have purchased the pet foods on the same terms
if the true facts regarding its ingredients had been known; (b) they paid an unfair price premium
due to the misrepresentations concerning the ingredients; and (c) the pet food in fact contained
ingredients which Defendant misrepresented were not contained in the pet food, which rendered
the pet food's value less than that paid by Plaintiff and Class members.

146.    As a result of the foregoing, Plaintiff and Class have suffered damages, as set
forth more fully above.

WHEREFORE, Plaintiff and Class pray for the relief requested in the Request for Relief
set forth below in this Petition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Scott Allan Bittle, individually, and on behalf of all others
similarly situated, prays for relief pursuant to each cause of action set forth, as follows:

1. For an order certifying that the action may be maintained as a class action, and
   appointing Plaintiff and her attorneys to represent the Class;

2. For an order enjoining Defendant from engaging in the practices set forth;

3. For an order compelling Defendant to conduct a corrective advertising campaign;

4. For an order requiring Defendant to disgorge or return all money, revenue, and profits obtained by means of any wrongful act or practice alleged;

5. For an order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unfair business act or practice, untrue, or misleading advertising, or unjust enrichment, or violation of the ICFA;

6. For an order awarding Plaintiff and the Illinois Sub-Class punitive damages;

7. For an award of attorney's fees, costs and expenses; and

8. Any other and further relief as the Court deems necessary, just, or proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint will be mailed to the Attorney General of the State of Illinois pursuant to 815 ILCS 505/10(a).

Respectfully Submitted,

By: _/s Sean K. Cronin_____
**DONOVAN ROSE NESTER, P.C.**
Sean K. Cronin. #06292624
Donovan Rose Nester, P.C.
210 South Illinois Street
Belleville, Illinois 62220
P. (618) 212-6500
F. (618 212-6501
scronin@drnpc.com